UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

MICHAEL F. ALLEVATO,

                          Petitioner,

          v.                                              9:21-CV-1159
                                                          (GTS)

DAVID HOWARD, Superintendent,

                          Respondent.

───────────────────────────────

APPEARANCES:                                    OF COUNSEL:

MICHAEL F. ALLEVATO
Petitioner, pro se
16-B-2208
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. LETITIA JAMES                              JODI A. DANZIG, ESQ.
Attorney for Respondent                         Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

GLENN T. SUDDABY
United States Chief District Judge

## DECISION and ORDER

## I.      INTRODUCTION

          Petitioner Michael Allevato seeks federal habeas corpus relief pursuant to 28 U.S.C. §

2254.  Dkt. No. 1, Petition ("Pet.").[1]  After an initial review of the petition, this Court directed

petitioner to file an affidavit explaining why the action should not be dismissed as untimely.

───────────────────────

          [1] For the sake of clarity, citations to petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

Dkt. No. 6, Decision and Order ("November Order").  Petitioner timely complied.  Dkt. Nos. 7

& 10, Affidavits and Exhibits in Support.

On January 20, 2022, the Court received a motion to amend the petition.  Dkt. No. 23,

Motion to Amend.  Respondent cross-moved (1) to file a limited response to petitioner's

motion to amend; and (2) to dismiss the original habeas petition as untimely.  Dkt. No. 40;

Dkt. No. 40-2, Exhibits Not Filed Under Seal; Dkt. No. 40-3, Memorandum of Law; Dkt. No.

42, Exhibits Filed Under Seal.  Petitioner was given the opportunity to file a submission which

both (1) responded to the motion to dismiss and (2) replied to respondent's opposition to the

motion to amend.  Dkt. No. 43, Text Order.  Petitioner timely filed said submission.  Dkt. No.

44.  Respondent requested, and was given, permission to file a reply for the motion.  Dkt. No.

46, Letter Motion; Dkt. No. 48, Text Order; Dkt. No. 49, Reply.  Petitioner also requested, and

was given, permission to file a sur-reply.  Dkt. No. 50, Letter Motion; Dkt. No. 51, Text Order;

Dkt. No. 52, Sur-Reply.

For the reasons which follow, the petition is deemed untimely and the motion to

amend is denied as moot.

## II.    BACKGROUND

As outlined by the New York State Appellate Division, Third Department, petitioner

"pleaded guilty to rape in the first degree [and, c]onsistent with the terms of the plea

agreement, . . . was sentenced to a prison term of eight years to be followed by 10 years

postrelease supervision."  *People v. Allevato*, 170 A.D.3d 1264, 1264 (3rd Dep't 2019).

Petitioner directly appealed his conviction and also moved to have the judgment

vacated, pursuant to Criminal Procedure Law § 440.10 ("440 motion"); however, the 440

motion was denied by the County Court without a hearing.  *Allevato*, 170 A.D.3d at 1264-65.

2

Petitioner's direct appeal and appeal of the denial of his 440 motion were heard together. *Id.* at 1265.

The New York State Appellate Division, Third Department affirmed the conviction and order denying the 440 motion, and, on September 18, 2019, the New York State Court of Appeals denied leave to appeal. Pet. at 2-3; *Allevato*, 170 A.D.3d at 1266, *lv. denied*, 34 N.Y.3d 949 (2019).[2]  Petitioner did not file a petition for a writ of certiorari. Pet. at 3.

On November 4, 2019, petitioner filed a pro se motion in the Court of Claims arguing entitlement to relief pursuant to a "constitution tort claim for damages" in the amount of a little more than three million dollars. Dkt. No. 42 at 2-63. Specifically, petitioner indicated that he did "not seek to collaterally attack a prior adverse judgment or order rather he s[ought] damages for the injuries and harm[] caused by [the state and county] employees acting in their official capacity[.]" *Id.* at 15.

On January 27, 2020, the Court of Claims issued a decision dismissing petitioner's claim. Dkt. No. 40-2 at 42-44. Specifically, the decision noted that the court had limited jurisdiction over claims against New York State and a limited number of other entities and had no jurisdiction over the county or district attorneys who petitioner named as parties to his suit. *Id.* at 43. Additionally, despite petitioner's claim seeking "to recover damages from his arrest and conviction . . . resulting from, in part, an allegedly illegal wiretapped/recorded telephone call," the Court determined petitioner failed to allege any wrongdoing. *Id.* at 42-43. A signed notice of appeal, dated May 27, 2020, was included with the state court record. *Id.* at 46-47. "Petitioner never perfected the appeal, and, consequently, the appeal was deemed

---

[2]  For the sake of clarity, citations to parties' filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

dismissed when the six-month period expired." Dkt. No. 40-1 at 4 (citing Practice Rules of the Appellate Division (22 NYCRR) § 1250.10(a)).

Subsequently on August 21, 2020, petitioner filed another motion, pursuant to the General Municipal Law § 50(1) and CPLR §§ 213(8) & 3002(e), seeking recovery of almost 4 million dollars in damages for compensation for violations of his rights, the loss of family relationships and income, and his own expenses as the result of various alleged torts committed against petitioner. Dkt. No. 42-1. Petitioner again argued that the unlawful controlled call violated his Fourth Amendment rights, resulting in his wife acting as a covert law enforcement agent who obtained potentially incriminating information without first receiving a warrant or providing petitioner with the proper *Miranda* warnings. *Id.* at 5, 8-24. Petitioner also alleged that (1) his criminal proceedings were deficient because he never received a preliminary hearing; (2) the prosecution failed to specifically identify the days and times of the alleged sexual assault and, regardless, new evidence established that the victim was not with the petitioner on November 27, 2015, so the abuse could not have happened that day; (3) the grand jury proceedings were defective given the prosecution's failure to comply with New York State Criminal Procedure Law § 710.30; (4) the plea agreement was induced by fraud, rendering it involuntary; and (5) the waiver of appeal was unlawful. *Id.* at 24-50.

In a Decision and Order dated April 15, 2021, the Otsego Supreme Court dismissed the action with prejudice. Dkt. No. 40-2 at 51-55. With respect to the new evidence and actual innocence that petitioner proffered, the court noted the following:

> Here, [petitioner] alleges that affidavits submitted by his mother and step-father, as well as a land contract dated November 23, 2015, show that [petitioner] could not have committed the crimes on

4

> November 27, 2015.  However, nowhere in the indictment or in the
> People's bill of particulars is it alleged that the crimes occurred on
> November 27, 2015, and [petitioner] pleaded guilty to committing
> Rape in the First Degree in September of 2015.  Moreover, there is
> no indication in the complaint or in the record as to why these
> affidavits or the land contract, which is a public record, could not
> have been discovered before [petitioner]'s plea on May 27, 2016.

Dkt. No. 40-2 at 54.  Petitioner appealed from the Supreme Court's order and had until April

20, 2022, to perfect the appeal; however, it does not appear that petitioner did so.  *Id.* at 57.

Petitioner also filed a writ of error coram nobis on May 22, 2021.  Dkt. No. 40-2 at 1-

38; *see also* Pet. at 3.  The Third Department denied the motion on July 29, 2021.  Pet. at 6.[3]

Petitioner applied for leave to appeal which the Court of Appeals denied on October 5, 2021.

Dkt. No. 40-2 at 39; *see also* Pet. at 4, 8, 9, 11.

## III.   THE PETITION

Petitioner challenges a 2016 judgment of conviction in Otsego County, upon a guilty

plea, of first degree rape.  Pet. at 1-2; *see also Allevato*, 170 A.D.3d at 1264.  Petitioner

contends that he is entitled to federal habeas relief because his counsel was constitutionally

ineffective.  Pet. at 5-11.

## IV.   AMENDED PETITION

Petitioner moves to amend his petition to add several additional claims.  Dkt. No. 23-1,

Proposed Amended Petition; Dkt. No. 27.  In addition to his claim for constitutionally

ineffective assistance of appellate counsel, Dkt. No. 23-1 at 1-10; Dkt. No. 27 at 5-11,

petitioner also seeks to add causes of action arguing that he is entitled to relief because (1) a

conflict of interest between petitioner's trial and appellate counsels "creat[ed] . . . biased

---

[3] It appears that petitioner made typographical errors in the other places where he indicated that his writ for error coram nobis was denied, indicating the date of the decision as May 28, 2021 instead of July 29, 2021.  *See* Pet. at 8, 9 ,11.

representation," Dkt. No. 23-1 at 10-11; (2)  his plea was involuntary, unknowing and coerced by fraud, Dkt. No. 23-1 at 11; Dkt. No. 27 at 11-17; (3) petitioner's Fourth Amendment rights were violated by a warantless eavesdropping call, in contravention of approved police methods, and covert use of petitioner's fiancee as a law enforcement agent, Dkt. No. 23-1 at 11; Dkt. No. 27 at 17-21; (4) his preliminary hearing was unlawful, Dkt. No. 11-12; Dkt. No. 27 at 21; (5) the grand jury proceedings were deficient and resulted in an indictment procured by unconstitutional methods, Dkt. No. 23-1 at 13; Dkt. No. 27 at 22-23; (6) new evidence from his mother and step-father established petitioner's actual innocence, Dkt. No. 23-1 at 13; Dkt. No. 27 at 21-22; and (7) the Attorney General's Office violated petitioner's rights by failing to comply with the congressional mandate to monitor, investigate and bring legal action against counties failing to comply with wiretap and warrant reporting information, Dkt. No. 23-1 at 13-14; Dkt. No. 27  at 23-24.

## V.    DISCUSSION

### A.    The Petition Is Untimely Filed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions.  28 U.S.C. § 2244(d)(1).  The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review.  28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).[4]

---

[4] Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable, or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C.

For purposes of section 2244, a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case. *Gonzalez*, 565 U.S. at 150; *Saunders v. Senkowski*, 587 F.3d 543, 547-49 (2d Cir. 2009).

In this case, as petitioner indicates in his petition, his conviction was affirmed by the Court of Appeals on September 18, 2019. Pet. at 2-3; *Allevato*, 34 N.Y.3d at 949. Petitioner's conviction became "final" for purposes of the AEDPA ninety days later, on December 17, 2019, when the time to seek certiorari expired. *Thaler*, 565 U.S. at 149. Petitioner had one year from that date, or until December 16, 2020, to file a timely federal habeas petition. The present petition, signed on October 18, 2021, is over ten months too late.[5]

## B.    Statutory Tolling Does Not Save The Petition.

Petitioner's affidavit indicates that his federal habeas action should be statutorily tolled because of (1) the lawsuits he filed against the State and County; (2) the grievances he filed concerning his conditions of confinement at Woodbourne Correctional Facility ("Woodbourne"); and (3) the New York Freedom of Information Law ("FOIL") requests that he made for various documents. Dkt. No. 7 at 1, 3-4, 7-10.

The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or

---

§ 2244(d)(1)(B)-(D). None of the bases for a later date upon which the statute of limitations could have begun to run appear to apply in this case.

[5] Under the prison "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988)

claim is pending." 28 U.S.C. § 2244(d)(2); *Saunders*, 587 F.3d at 548.  The tolling provision "excludes time during which properly filed state relief applications are pending, but does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam).  The tolling provision excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the motion was taken. *Saunders*, 587 F.3d at 548; *Smith*, 208 F.2d at 16.

The Supreme Court has explained that "'collateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *Wall v. Kholli*, 562 U.S. 545, 553 (2011).  The Second Circuit explained that the judgment or claim to which this rule applies "has repeatedly been held to refer to te petitioner's conviction and sentence." *Santana v. Griffin*, No. 1:17-CV-3827, 2018 WL 1229860, at *4 (S.D.N.Y. Mar. 7, 2018) (citing *Collins v. Ercole*, 667 F.3d 247, 250 & n.3 (2d Cir. 2012)).  The Second Circuit has also further clarified the *Wall* decision, declaring that "[r]ead straightforwardly, this passage says that 'review' occurs when a reviewing court reconsiders the work of the original court to correct any error or infelicity committed by that original court – or rather, submits that original court's work to examination for potential revision." *Collins*, 667 F.3d at 251.

Conversely, where "a reviewing court merely considers a judgment with a view to amending or improving something *besides* that judgment . . . is not an application for review of the judgment itself." *Collins*, 667 F.3d at 251.  Therefore, "[m]otions for post-conviction discovery . . . [which might uncover] material [petitioner] claims might be of help in developing such a challenge [to his conviction]," are insufficient to toll the imitations period

8

because the petitioner is not "seeking a review of the judgment itself, [and instead seeks] resources that could be of assistance in a future collateral attack." *Montalvo v. Lavalley*, No. 2:11-CV-5200, 2014 WL 6909513, at \*6-\*7 (E.D.N.Y. Dec. 8, 2014) (citing *Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001)) (finding that an Article 78 petition asking the County to pay for an attorney, expert, and other services, and direct CPS to provide records was insufficient to statutorily toll the limitations period because the applications failed to challenge the validity of the criminal conviction); *see also Santana*, 2018 WL 1229860, at \*4 ("A state habeas petition that does not seek reexamination of a conviction or sentence, but instead seeks material to facilitate a post-conviction challenge, is insufficient to toll AEDPA's statute of limitations.") (citing cases); *Gould v. West*, No. 1:05-CV-0602, 2007 WL 2609898, at \*2 (S.D.N.Y. Sept. 7, 2007) (holding that a motion to compel compliance with a FOIL request seeking material to aid in the challenge of a criminal conviction was insufficient to trigger statutory tolling).

Moreover, where a reviewed court does not have "authority to order relief from a judgment," such motions have also been deemed insufficient for entitlement to statutory tolling. *Wall*, 562 U.S. at 556 n.4; *see also Skinner v. Switzer*, 562 U.S. 521, 538 n.15 (2011) (holding that while petitioner's challenge was "part of the state collateral review process" it was not "an application for collateral review" because the motion "does not itself provide a vehicle for relief . . . [since it] does not give the . . . court authority to overturn a conviction.") (internal quotation marks and citations omitted); *Blue v. Medeiros*, 913 F.3d 1, 7 (1st Cir. 2019) (explaining that collateral review had not occurred "[e]ven though a judge must take a peek at the underlying claim to see if the merits are hopeless, [because] she has no authority to either alter the judgment or change the sentence.").

9

i.   **Various Lawsuits and Grievances That Were Filed Do Not Constitute "Properly Filed Collateral Attacks**"

Petitioner contends that his state and county lawsuits, prison grievances, and FOIL requests constitute properly filed collateral attacks on his criminal conviction.  Dkt. No. 44 at 1-2, 4-8, 12-13.  However, the respondent, as well as this Court, disagree.

Petitioner's lawsuits in the Court of Claims, filed in November of 2019, and in the Supreme Court of Otsego County, in September of 2020, sought monetary damages for compensation for various constitutional violations that petitioner allegedly experienced.  Dkt. No. 42 at 15-16; Dkt. No. 42-1 at 3, 52-54.  Interestingly enough, petitioner specifically represented that his Court of Claims case did not "seek to collaterally attack a prior adverse judgment or order rather he seeks to recover damages for injuries and harm[] caused by [the State and County] employees acting in their official capacity[.]"  Dkt. No. 42 at 15.  Additionally, in his Supreme Court case petitioner specifically enumerated the injuries he received and the corresponding monetary sums he should be accorded to reasonably compensate him for the alleged constitutional violations he suffered, as well as his personal and professional losses as a free man and as an inmate.  Dkt. No. 42-1 at 52-53.  Accordingly, petitioner was not truly seeking collateral review of his judgment of conviction and demanding his release.  Instead, he was solely seeking monetary damages.

To the extent petitioner goes on to argue that courts can consider these civil lawsuits on collateral review because it constitutes "review other than review of a judgment in the direct appeal process," Dkt. No. 52 at 4, petitioner misunderstands the standard.  As outlined above, a judicial *act* of collateral review is not automatically synonymous with *an application for* review.  At its core, statutory tolling requires the court to be reexamining the facts

underlying the criminal conviction for purposes of correcting an error with that conviction. Here, however, despite petitioner's derivative arguments for contract recession of his allegedly involuntary and invalid plea deal, Dkt. No. 44 at 1-2, 7-8 and Dkt. No. 42-1 at 37-44, the courts did not have the authority to grant that sort of relief.

Petitioner's request to invalidate his plea deal was a request to vacate his judgment of conviction, which is only properly brought in a motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10 ("440 motion"). The Court of Claims has no jurisdiction to review a judgment of conviction, instead, its jurisdiction is limited to civil claims against the State and a few other state-related entities. N.Y. Court of Claims Act § 9. Petitioner previously filed a 440 motion, which was decided simultaneously with his direct appeal; therefore, he was aware of the proper procedural vehicle through which to make this type of challenge. *Allevato*, 170 A.D.3d at 1264-65.

Furthermore, a 440 motion must be filed with the same court which rendered the judgment of conviction. CPL § 440.10(1); *see also Pirro v. Cirigliano*, 226 A.D.2d 465, 465 (2d Dep't 1996) ("Therefore, only the court that rendered the . . . judgment of conviction may entertain [a 440] motion to vacate that judgment."); *People v. Ruiz*, 144 Misc. 2d 826, 827-28 (Sup. Ct., Westchester County, 1989) (holding that 440 "[m]otions brought in the Supreme or County Courts regarding a judgment of the other have been dismissed for lack of jurisdiction, despite each court being a superior court.") (citing cases). Petitioner was convicted by the Ostego County Court. *Allevato*, 170 A.D.2d at 1264. Petitioner filed his second motion seeking monetary damages in the Supreme Court of Ostego County, not the Ostego County Court. This was not the same court which rendered his judgment of conviction.

In sum, petitioner filed the wrong motions in the wrong courts. Accordingly, as the

11

holdings in *Skinner* and *Blue* have directed, statutory tolling is inapplicable to petitioner's state and county court actions because, assuming petitioner was truly attempting to challenge his underlying criminal conviction, the courts lacked jurisdiction to provide him with the relief he requested.

Furthermore, petitioner's prison grievances are similarly insufficient to warrant tolling. Petitioner specifically challenged Woodbourne's alleged actions denying petitioner access to the courts by failing to timely provide him with the appropriate forms to file in state court   Dkt. No. 7 at 8-9; Dkt. No. 7-1 at 123-146; Dkt. No. 44 at 7.  However, these complaints have nothing to do with petitioner's criminal conviction of first degree rape; therefore, they do not seek review of the pertinent judgment.  *Santana*, 2018 WL 1229860, at *4.

Similarly, petitioner's FOIL requests, seeking documentation from multiple agencies from December 2019 through May 2020, are also insufficient to trigger statutory tolling.  Dkt. No. 7 at 7.  Given the nature of FOIL requests – seeking the production of documents to use in later proceedings to assist in various challenges – and the subsequent Article 78 proceedings initiated in an attempt to enforce said FOIL requests, they have consistently been deemed civil proceedings that are not properly filed applications seeking collateral review warranting statutory tolling.  *See Williams v. Breslin*, 274 F. Supp. 2d 421, 426 n.2 (S.D.N.Y. 2003) (citing cases).  Petitioner himself acknowledges this when he states that his Article 78 proceedings and FOIL requests are state applications for relief helping him to further marshal relevant evidence needed to challenge his criminal conviction.  Dkt. No. 44 at 6-7.  In sum, any FOIL request or motion for enforcement filed thereafter only attempts to marshal evidence for forward-looking challenges to the conviction, which are inadequate to trigger tolling.

### ii. The 440 Motion and Error Coram Nobis Are Not Eligible For Statutory Tolling

While the statute of limitations will be statutorily tolled while petitioner's properly filed collateral attack was pending, his habeas petition is still untimely.

Petitioner's 440 motion was filed prior to the conclusion of his direct appeal; therefore, the appellate courts combined the decisions concerning both the direct appeal and collateral challenge into any written orders it issued.  Pet. at 2-3; *Allevato*, 170 A.D.3d at 1266, *lv. denied*, 34 N.Y.3d 949 (2019).  Both the Third Department and Court of Appeals affirmed the denial of petitioner's 440 motion.  *Allevato*, 170 A.D.3d at 1266, *lv. denied*, 34 N.Y.3d 949 (2019).  Petitioner then had ninety days before his conviction became final and the statute of limitations began to run.  *Gonzalez*, 565 U.S. at 150; *Saunders v. Senkowski*, 587 F.3d 543, 547-49 (2d Cir. 2009).  Because petitioner's 440 motion was fully exhausted prior to petitioner's conviction becoming final, the 440 motion had no impact on the statutory limitations period and tolling would not apply.

Petitioner's writ for error coram nobis was filed on May 22, 2021, five months beyond the expiration of the limitations period.  Therefore, the writ of error coram nobis had no bearing on the present analysis because an application for collateral relief cannot serve to "revive [an] expired statute of limitations."  *Gillard v. Sticht*, No. 9:16-CV-0513 (MAD), 2017 WL 318848, at *3 (N.D.N.Y. Jan. 23, 2017) (citations omitted); *accord, Roberts v. Artus*, No. 1:16-CV-2055, 2016 WL 2727112, at *2 (E.D.N.Y. May 5, 2016) ("If the 440 motion was filed after the one-year statute of limitations period expired, it cannot be counted for purposes of statutory tolling.").

### C. Equitable Tolling Does Not Save The Petition.

AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (citing, *inter alia*, *Smith* 208 F.3d at 17).  The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011).   A petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008).

To make the requisite showing, a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing[.]" *Rodriguez*, 2015 WL 5968837, at *6 (quoting *Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir. 2001)).  Further, a petitioner must establish that he "acted with reasonable diligence throughout the period he seeks to toll." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004). "The link of causation is broken if the person seeking equitable tolling has not exercised reasonable diligence." *Rodriguez,* 2015 WL 5968837, at *6  (citing *Barrett v. United States*, 961 F. Supp. 2d 403, 408 (D. Conn. 2013)); *see also Hizbullahankhamon,* 255 F.3d at 75; (noting that causal relationship cannot be demonstrated "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

Petitioner argues that equitable tolling should save his petition because, despite many obstacles being incarcerated at Woodbourne, petitioner diligently pursued his rights by continuing to file his state and county civil cases, prison grievances, and FOIL requests.  Dkt.

No. 7 at 2.  Furthermore, petitioner alleged that extraordinary circumstances in the form of (1) state court rejections of petitioner's requests for subpoenas and documents against Otsego County and (2) delays caused by the COVID pandemic related to grievance proceedings and law library access entitled him to tolling.  *Id.* at 4-5, 8-10.  Respondent opposes those assertions.  Dkt. No. 40-3 at 8-11.

Here, petitioner fails to satisfy either prong of the standard.  First, all of the actions petitioner enumerates deal with the civil lawsuits for damages, prison grievance procedures, and FOIL requests.  For the reasons previously discussed, none of these motions or actions constitute a properly-filed collateral attack on petitioner's conviction.  And, in fact, these actions belie any claims that petitioner was diligently pursuing his available remedies to challenge his judgment and conviction.  Petitioner initially filed a 440 motion seeking to vacate the judgment of conviction; however, during the time period where he filed a plethora of unrelated civil and administrative proceedings, he never again engaged in those types of proceedings which would have challenged his underlying criminal conviction.  His litigation history demonstrates that he knows how to file a 440 motion, as he successfully did it before, and that he never did it again despite what he alleges are continued claims of constitutional violations surrounding his plea bargain.

Further, petitioner continued to pursue his civil and administrative remedies throughout the years, despite the alleged issues with facility mail, receiving incorrect forms, and the COVID-19 pandemic.  Accordingly, because none of these issues served to prevent petitioner from pursuing his civil and administrative remedies, they cannot now be deemed extraordinary circumstances sufficient to preclude petitioner from pursuing his ability to collaterally challenge his conviction.

15

Therefore, equitable tolling does not save petitioner's untimely filing.

**D.     No Equitable Exception Saves the Petition.**

Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. §2244(d)(1) in cases where a petitioner can prove actual innocence.  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  It is important to stress that "[o]nce guilt is . . . established . . . a federal habeas court will not relitigate the question of guilt for a state defendant who protests his actual innocence . . . [r]ather, a federal habeas court will review state convictions for constitutional error."  *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019).

An actual innocence claim will be recognized only in a "narrow class of truly extraordinary cases [where a petitioner can] present[] credible and compelling claims of actual innocence."  *Hyman*, 927 F.3d at 656 (citing *Schlup*, 513 U.S. at 315) (internal quotation marks omitted); *see also House*, 547 U.S. at 538 (noting that the actual innocence gateway standard is "demanding and permits review only in the extraordinary case.") (internal quotation marks omitted).  "The petitioner's burden in making a gateway showing of actual innocence is deliberately demanding."  *Hyman*, 927 F.3d at 656 (citing cases).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence–that was not presented at trial."  *Schlup*, 513 U.S. at 324; *see also Rivas v. Fischer*, 687 F.3d 514, 518 (2d Cir. 2012); *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003).  In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that

16

no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*,

547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327);[6] *see also Doe*, 391 F.3d at 160-62.

"The standard's demand for evidence *of innocence* references factual innocence, not

mere legal insufficiency." *Hyman*, 927 F.3d at 657 (internal quotation marks and citations

omitted).  In clarifying what this standard requires, the Second Circuit explained:

> a reviewing court assessing the probability of actual innocence is
> not limited to the trial record.  To the contrary, it "must consider all
> the evidence, old and new, incriminating and exculpatory," *House
> v. Bell*, 547 U.S. at 538 . . . (internal quotation marks omitted), and,
> in doing so, "is not bound by the rules of admissibility that would
> govern at trial," *Schlup v. Delo*, 513 U.S. at 327 . . . This is
> because, at the gateway stage of inquiry, a habeas court's task is
> not to identify trial error or to delineate the legal parameters of a
> possible new trial.  It is to identify those cases in which a
> compelling showing of actual innocence would make it a manifest
> injustice to maintain conviction unless it was free of constitutional
> error.  Thus, incriminating evidence obtained in the course of an
> unlawful search, or custodial admissions made in the absence of
> Miranda warnings, may well be inadmissible at trial.  Nevertheless,
> such evidence is properly considered in assessing factual
> innocence, with the manner of procurement informing reliability and
> relevance and, therefore, weight.

*Id.* at 658; *see also Bousley v. United States*, 523 U.S. 614, 623-24 (1998) ("'[A]ctual

innocence means factual innocence, not mere legal insufficiency.") (citations omitted).

Liberally reading all of petitioner's submissions, it appears he feels he has

demonstrated his actual innocence through (1) hospital records and (2) affidavits from his

mother and step-father.  Dkt. No. 7 at 7-8; Dkt. No. 27 at 21-22; Dkt. No. 44 at 9, 13.  To the

---

[6] *Schlup* and *House* involved procedurally defaulted claims.  *See McQuiggan*, 569 U.S. at 386.  The Supreme Court in *McQuiggan* held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, the expiration of the statute of limitations."  *Id.*

extent petitioner seeks to use either of these sets of facts to forgive his untimely petition, such ambitions shall remain unrealized.  This is because petitioner has failed to meet the rigorous standard outlined for actual innocence.

Petitioner pled guilty to first degree rape and, in doing so, admitted under oath that he committed acts charged in the indictment.  *See Allevato*, 170 A.D.3d at 1264; Dkt. No. 40-2 at 51.  Every court in this circuit has found that a guilty plea greatly undermines subsequent claims of actual innocence.  *See Germain v. Racette*, No. 9:13-CV-1530 (MAD/DEP), 2015 WL 7709606, at *6 (N.D.N.Y. Sept. 10, 2015) (concluding that when an actual innocence claim is based on "evidence that was available to [petitioner] . . . at the time he entered a plea of guilty," and "[d]espite his awareness of all this evidence, [petitioner still] entered a voluntary plea of guilty, [those] fact[s] work[] against a finding of actual innocence."); *Horton v. Recktenwald*, No. 1:15-CV-0843, 2017 WL 2957826, at *2 (W.D.N.Y. July 11, 2017) (same); *Raymond v. New York*, No. 17-CV-6383, 2019 WL 168561, at *12 (E.D.N.Y. Jan. 11, 2019) (holding that subsequent credibility issues concerning testifying witnesses are insufficient "to support a claim of actual innocence, especially in light of petitioner's sworn acknowledgment at his guilty plea [that he committed the acts for which he was charged.]"); *Johnson v. Capra*, No. 1:16-CV-3116, 2018 WL 1581682, at *7 (S.D.N.Y. Mar. 27, 2018) ("[Petitioner's] admission [during a guilty plea] in court further undermines his claim of actual innocence."); *Bower v. Walsh*, 703 F. Supp. 2d 204, 227-28 (E.D.N.Y. 2010) ("The Second Circuit has held that a habeas court can consider a guilty plea in the context of making an actual innocence determination.") (citing cases).  Accordingly, petitioner's representations during his plea allocution are difficult to ignore absent extremely compelling information.

In attempts to offset his admissions, petitioner first relies on hospital records indicating

18

that the victim's hymen was intact and no cutaneous signs of trauma were noted.  Dkt. No.

42 at 39.  Second, petitioner provides affidavits from his mother and step-father, "as well as a

land contract dated November 23, 2015, [that allegedly] show that [petitioner] could not have

committed the crimes on November 27, 2015."  Dkt. No. 40-2 at 54.

This Court must balance this against the other information petitioner provided in

addition to his guilty plea.  This includes the report by the victim's mother that she found a

note in the victim's trash can that stated that the victim had been penetrated by, and had oral

sex with, the petitioner.  Dkt. No. 42 at 33, 49.  The incident report, created by law

enforcement, indicates that the victim shared that the abuse began in July of 2015 and lasted

until approximately November 30, 2015.  *Id.* at 36, 49.  Medical records – which contain the

entry that petitioner classifies as new evidence and upon which he relies – indicate that the

interview and examination of the victim occurred approximately one month after the last

reported date of abuse.  *Id.* at 33, 36-41.  A controlled phone call occurred between petitioner

and the victim's mother, during which petitioner admitted to having penetrated the victim

several times.  *Id.* at 49 (incident report by law enforcement); *id.* at 55-59 (portion of

controlled call transcript admitting to having sexual relations with victim).  Petitioner also

provided a statement to police, after receiving a Miranda warning, that admitted that he and

the victim had sex on three occasions because the victim demanded both oral and vaginal

sex and said "she was going to tell her mother that [petitioner] did it anyway."  *Id.* at 50.

Furthermore, the Otsego Supreme Court provided an opinion on the persuasiveness

of the affidavits serving as new evidence of actual innocence.  Specifically the court noted

that

nowhere in the indictment or in the People's bill of particulars is it

19

> alleged that the crimes occurred on November 27, 2015, and
> Plaintiff pleaded guilty to committing Rape in the First Degree in
> September of 2015.  Moreover, there is no indication in the
> complaint or in the record as to why these affidavits or the land
> contract, which is a public record, could not have been discovered
> before [petitioner]'s plea on May 27, 2016.

Dkt. No. 40-2 at 54.  The conclusory assertions that these affidavits proffer are, at best, inconsistent with, and, at worst, contradictory to petitioner's sworn testimony and the additional evidence outlined above; therefore, the affidavits "lack the probative force necessary to support a claim of actual innocence."  *Pluff v. Superintendent*, No. 9:18-CV-0914 (DNH/DJS), 2021 WL 4463557, at *4 (N.D.N.Y. Sept. 8, 2021) (internal quotation marks and citations omitted).

In sum, the evidence demonstrates that petitioner admitted to committing the underlying acts for which he was accused.  Viewing the medical records and affidavits in conjunction with the rest of the medical evidence, the transcript of the controlled call, and the police report, it is clear that petitioner has failed to establish actual, factual evidence of innocence. While no jury was impaneled because petitioner pled guilty, to the extent such information was presented to a jury, this Court finds that it is more likely than not that reasonable jurors would find petitioner guilty beyond a reasonable doubt.  Accordingly, petitioner's claims of actual innocence are insufficient to pass through the narrow gateway for federal review of a barred claim.

## VI.    MOTION TO AMEND

Given the undersigned's decision to deny and dismiss the instant petition as time-barred, petitioner's motion to amend will also be denied as moot.  *See Sorce v. Artuz*, 73 F. Supp. 2d 292, 299 (E.D.N.Y. 1999).

20

## VII.   CONCLUSION

**WHEREFORE**, it is

**ORDERED** that respondent's motion to dismiss, Dkt. No. 40, be **GRANTED**; and it is further

**ORDERED** that the motion to amend, Dkt. No. 23, be **DENIED AS MOOT**; and it is further

**ORDERED** that the petition, Dkt. No. 1, be **DENIED AND DISMISSED IN ITS ENTIRETY;** and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[7] and it is further

**ORDERED** that any further request for a Certificate of Appealability be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order upon the parties in accordance with the Local Rules.

Dated: July 26, 2022
        Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).